(C. D. 1652)

Accurate Millinery Co.
Roberts, Reilly & Sons et al.
} v. United States

United States Customs Court, First Division

(Decided November 10, 1954)

Brooks & Brooks (Frederick W. Brooks and Thomas J. McKenna of counsel) for the plaintiffs.

Warren E. Burger, Assistant Attorney General (Joseph E. Weil, trial attorney), for the defendant.

Lamb & Lerch (John G. Lerch and David A. Golden of counsel) as amicus curiae.

Before Oliver, Mollison, and Wilson, Judges

Mollison, Judge: The merchandise the subject of these protests consists of women's fur felt hoods classified by the collector of customs under the provisions of paragraph 1526 (a) of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T. D. 51802, generally putting into effect the General Agreement on Tariffs and Trade, and the Presidential proclamation reported in T. D. 52600, terminating in part the said earlier proclamation.

As originally enacted, paragraph 1526 (a) of the Tariff Act of 1930, so far as pertinent, provided for:

* * * hoods, for * * * women's * * * wear, trimmed or untrimmed, including bodies, hoods, plateaux, forms, or shapes, for hats * * * composed wholly or in chief value of fur of the rabbit, beaver, or other animals, * * *

with rates of duty graduated on a rising scale, depending upon the per dozen value of the hoods.

By Presidential Proclamation No. 2761A of December 16, 1947, the President of the United States proclaimed certain modifications of existing duties with respect, among other things, to hoods covered by the foregoing language, as were then found to be required or appropriate to carry out the General Agreement on Tariffs and Trade. The said proclamation, reported in T. D. 51802, modified the rates of duty applicable to most articles covered by paragraph 1526 (a), *supra*, but did not change the descriptive language.

Subsequently, and as the result of a Tariff Commission investigation, and in accordance with certain provisions of the said General Agreement on Tariffs and Trade, the President issued a proclamation, numbered 2912, of October 30, 1950, reported in T. D. 52600, terminating in part his previous proclamation and, in effect, withdrawing the tariff concessions with respect, among other things, to:

* * * hoods, for women's wear, including bodies, hoods, plateaux, forms, or shapes, for women's hats or bonnets, composed wholly or in chief value of fur felt, and valued at more than $9 and not more than $24 per dozen * * *.

In classifying the merchandise at bar as he did, the collector of customs necessarily found that the hoods in question were "composed wholly or in chief value of fur felt," and assessed duty at the appropriate rates according to the per dozen values of the hoods.

The plaintiffs rely upon the so-called "preexisting material" doctrine or rule, contending that the clause "composed wholly or in chief value of fur felt" found in Presidential Proclamation No. 2912, *supra*, presupposes that the fur felt existed before the hoods themselves came into existence. It is contended that the evidence establishes that the fur felt of the imported hoods never had an existence independently of the hoods, and that, consequently, the hoods are not "composed wholly or in chief value of fur felt" within the meaning of that term as used in the statute, as modified by the Presidential proclamation.

Defendant contends, first, that the Tariff Commission's report and Presidential Proclamation No. 2912 indicate that the Tariff Commission and the President meant "composed wholly or in chief value of fur" when they used the term "composed wholly or in chief value of fur felt"; second, that the language "composed wholly or in chief value of fur felt" does not contemplate a preexistence of the material, fur felt; and, alternatively, and third, that even if it be

held that it is necessary that the fur felt be preexistent to the manufacturing of the hoods, then, according to the weight of the evidence, the fur felt was preexistent to the manufacturing of the hoods in this case.

As the issues are presented, therefore, they involved two questions of law and one of fact. We will take up first the questions of law, as they are by their nature preliminary to the determination of the question of fact.

Defendant's contention that the term "composed wholly or in chief value of fur felt," as used in Presidential Proclamation No. 2912, *supra*, should be interpreted as meaning "composed wholly or in chief value of fur" is supported by nothing in the way of evidence and little, if anything, by way of persuasive argument. The term used in both paragraph 1526 (a) of the Tariff Act of 1930 and Presidential Proclamation No. 2761A, modifying the same, is "composed wholly or in chief value of fur of the rabbit, beaver, or other animals." On its face, this language would seem to be of greater scope than that used in the Tariff Commission's report, No. 170, Second Series (GPO Cl. No. TC 1.9:170), entitled "Women's Fur Felt Hats and Hat Bodies," and in Presidential Proclamation No. 2912, viz, "composed wholly or in chief value of fur felt." Manifestly, all hoods, composed of fur felt, would also be hoods, composed of fur, but not all hoods, composed of fur, would necessarily be hoods, composed of fur felt.

In making its report, the Tariff Commission acted pursuant to Executive Order No. 10082, 3 CFR, 1949 supp., page 125, empowering it to make investigations for the purpose of determining whether, as a result of unforeseen developments and of the concessions granted by the United States in the General Agreement on Tariffs and Trade, articles covered by such concessions are being imported in such increased quantities and under such conditions as to cause or threaten serious injury to the domestic industry producing like or similar articles. Such investigation with respect to hats, etc., including hoods, "composed wholly or in chief value of fur felt" was ordered by the Tariff Commission on April 7, 1950, and the notice of hearing was published in the weekly pamphlet "Treasury Decisions" at page 60 of the issue of April 13, 1950.

We do not understand defendant to contend that either commonly or commercially in this country, and with reference to hoods, the term "composed wholly or in chief value of fur" is limited to or used interchangeably with the term "composed wholly or in chief value of fur felt." No attempt was made to support such a contention by evidence. Rather, it appears to be defendant's contention that that was the understanding of both the Tariff Commission and the President as to the meaning of the terms.

No reason appears why this should be so. On the contrary, it appears that both the Tariff Commission and the President were well aware that the tariff term, as originally enacted and as modified by the Presidential Proclamation No. 2761A, in connection with the General Agreement on Tariffs and Trade, was "composed wholly or in chief value of fur." This exact language was quoted by the President in paragraph numbered 3 of the preamble or statement of authority contained in proclamation No. 2912. When, therefore, it is found that in the said proclamation No. 2912 the President went on to proclaim that the earlier proclamation was—

* * * hereby terminated in part to the extent that * * * it shall be applied as though item 1526 (a) in Part I of Schedule XX of the said General Agreement were stated as follows:

\*  \*  \*  \*  \*  \*  \*

* * * hoods, for * * * women's * * * wear * * * composed wholly or in chief value of fur of the rabbit, beaver, or other animals (except any of the foregoing * * * hoods, for women's wear * * * composed wholly or in chief value of fur felt * * *) * * *

some effect must be given to the deliberate choice of a more limited description.

Defendant's arguments on this point are predicated at least, in part, upon the fact that the investigation of the Tariff Commission, its report, and the proclamation of the President concerned themselves with articles provided for in paragraph 1526 (a) of the tariff act, as modified, and it is argued that the investigation, report, and proclamation were concerned with *all* of the articles so provided for. We fail to find any merit in this argument. The Tariff Commission notice, its report, and the proclamation of the President are clearly limited to hats, etc., "composed wholly or in chief value of fur felt," which products, so far as we are aware, were covered, among other products, by the more general language of paragraph 1526 (a) for hats, etc., "composed wholly or in chief value of fur of the rabbit, beaver, or other animals."

Finding no merit in this point on the record presented, we proceed to examine defendant's second point of law, viz, that the language "composed wholly or in chief value of fur felt" does not contemplate the preexistence of the material, fur felt.

On this point, counsel for both parties have cited and referred to the decision of our appellate court in the case of *Alfred Kohlberg, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111. That case, among other things, involved a construction of the term "Laces * * * and articles wholly or in part thereof" appearing in paragraph 1529 of the Tariff Act of 1930, as applied to certain cotton gloves with lace cuffs, crocheted in one continuous process.

When the case was before this court for decision, the second division thereof pointed out that the predecessor provision in paragraph 1430

of the Tariff Act of 1922 had been "articles composed in any part, however small, of lace," and stated that, under the prevailing decisions, the last-quoted provision required the preexistence of lace before the creation of the article, composed in part of lace. *Alfred Kohlberg, Inc.* v. *United States*, 2 Cust. Ct. 84, C. D. 93, at pages 90–91.

Taking cognizance of and giving effect to the change in language between the 1922 and 1930 act provisions, the trial court concluded that it was the intention of Congress to get away from the line of decisions relating to the preexisting material doctrine by omitting the words "composed * * * of" from the 1930 act provision, and held that preexistence of lace was not a requirement under the 1930 act language "Lace * * * and articles wholly or in part thereof."

Although affirming the decision of the trial court on appeal, the majority, consisting of three of the judges of the Court of Customs and Patent Appeals, at page 358 of the reported decision, pointed out the following:

> At this point it may be noted that we have found no decision of this court in which a provision involving the word "composed" was held to require the application of the principle of the independent preexistence of a component material.

and found it unnecessary to determine that Congress, in omitting the words "composed * * * of" was desirous of avoiding the application of the preexisting material doctrine. The majority of the appellate court found that the language actually used by Congress in the 1930 act provision, i. e., "Laces * * * and articles wholly or in part thereof" implied that a thing may be a part of the article referred to, even though the part was produced in connection with the production of the article itself. The provision was entirely different, the majority said, from those to which the preexisting material doctrine had been applied in that the latter definitely suggested a preexistence of the component material.

The minority of two judges took the view that the provision should be construed as though it read: "Laces * * * and articles composed or made wholly or in part thereof," both on ground of logical construction and the position of the phrase in the paragraph there in question.

Citing *United States* v. *Guy B. Barham*, 26 C. C. P. A. (Customs) 83, T. D. 49614, as authority for the holding that the terms "made of," "manufactures of," "manufactured of," and "composed of" were kindred expressions, the minority also cited *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335, and the cases therein cited, as authority for the proposition that any of such terms necessarily implies that the material of which an article is manufactured, made, or composed had a prior, separate, and independent existence.

While the *Kohlberg* case constitutes the latest expression from our appellate court which has relation to the question of whether or not the preexisting material doctrine is applicable to the term "composed of," nevertheless, it must be pointed out (1) that the tariff term there in question actually did *not* use the phrase "composed of," and (2) that the majority found it was not implicit in the tariff term involved.

We, therefore, do not consider the *Kohlberg* case as authority either way on the question of whether the term "composed of" requires the application of the preexisting material doctrine. While certain observations in the majority opinion might indicate that the majority would have ruled that the term "composed of" did not require pre-existence of material, had the question been involved, nevertheless, there was no direct expression of such a view.

In the brief filed on behalf of the plaintiffs in this case, their counsel argues along the same lines as did the minority of our appellate court in the *Kohlberg* case, *supra*, i. e., that the terms "made of," "manufactured of," and "composed of" in tariff statutes mean the same thing and are subject to the same interpretation. Plaintiffs also cite the case of *United States* v. *Tamm & Co.*, 2 Ct. Cust. Appls. 425, T. D. 32173, for the holding that the term "composed of" means "made of, made up of, consisting of."

Further, counsel for the plaintiffs directs attention to the well-settled rule in tariff construction used in cases where the classification of an imported article is determined by the material of which it is composed which is in chief value. The rule in such cases, as expressed in *United States* v. *Bernard, Judae & Co.*, 15 Ct. Cust. Appls. 172, T. D. 42231, is—

* * * that the value of the materials of which an article is composed shall be ascertained at the time when they are in such condition that nothing remains to be done to them except putting them together * * *

and counsel argues that the effect of the words "composed wholly or in chief value of" must relate back in point of time to that time when the materials exist *as materials* and before they are assembled into the article.

Counsel for the defendant argues that the connotation of the term "composed of" is not the same as that of "made of" or "manufactured of," suggesting that the former merely means that the material is one of the constituents of the article, whereas the latter terms, which have been held to require the application of the preexisting material doctrine, contemplate that the material must exist first before it is made or manufactured into the article.

We recognize that the arguments for both the plaintiffs' and defendant's positions are very persuasive and that the question is a close one. However, we are impelled to determine it in favor of the plaintiffs'

view by reason of the fact that it appears to have been the view of this court for many years that the tariff term "composed of," or similar terms wherein the determinant of classification is the material of which an imported article is "composed," requires the application of the pre-existing material doctrine.

Note, among others, *Nicolas Hemance* v. *United States*, 48 Treas. Dec. 605, T. D. 41273, wherein this court held that rugs on which appeared a fringe were, nevertheless, not dutiable under a provision for "fringes * * * and all fabrics and articles composed in any part, however small, of any of the foregoing" since the fringe appearing on the rugs was not a separate and distinct entity at the time it was applied to the rugs. See also *A. N. Khouri* v. *United States*, 50 Treas. Dec. 594, Abstract 196, involving a similar situation with respect to handkerchiefs, in part of lace, and *Isler & Guye* v. *United States*, 53 Treas. Dec. 352, T. D. 42685, wherein hats, woven or plaited directly from grass, were held not dutiable under a provision for "hats * * * composed wholly or in chief value of [braids, plaits * * * of * * * grass]" since the grass never had an independent existence as braids or plaits.

Note also the decision of the trial court referred to above in the *Kohlberg* case, and the case of *Bryant & Heffernan, Inc.*, and *Scap Foreign Trade, New York* v. *United States*, 32 Cust. Ct. 192, C. D. 1603, reported in Treasury Decisions advance sheets issue of April 8, 1954, at page 9, and particularly at page 19.

We conclude, therefore, that to come within the provision "composed wholly or in chief value of fur felt" the article must be composed of fur felt which first had a separate and independent existence as fur felt. We, therefore, address ourselves to a consideration of the question whether such fact was or was not established by the evidence adduced in the case at bar.

Exhibits 1, 2, and 3 were received in evidence as representative of the various items of merchandise here involved. They differ in color and value, but the method of manufacture, insofar as the issues in this case are concerned, was the same in each case.

There does not appear to be any serious dispute as to the processes used to bring exhibits 1, 2, and 3 into their imported condition, which is that of a cone with a rounded apex instead of a point, or what might be described as a dome-shaped article.

So far as the record indicates, the only materials used in the production of exhibits 1, 2, and 3 are raw rabbit fur stock, i. e., fur cut from the skin, and hot water. According to the record, there are three main processes to which the materials are subject in order to produce exhibits 1, 2, and 3. These processes are forming, fulling, and finishing.

The first process is the forming process, which consists of making a cone of the fur stock. This is done with the use of a machine or apparatus called a "former," which may be described as follows:

Inside a box-like chamber, there is a perforated metal cone (apparently with a dome instead of a point at the apex) which has a suction arrangement at the bottom so that air will be sucked through the perforations of the cone. A weighed amount of fur sufficient to make one article is placed in a side chamber and is projected or blown into the chamber, containing the perforated metal cone and suction arrangement, and settles on the cone, which is kept revolving. At the same time, hot water is sprayed on the cone. Controls are provided so that the thickness of the layer of fur and its size can be controlled. Because of the settling, suction, and hot water, the natural scales of the fur fibers interlock, and when all of the fur has been deposited on the metal cone, it is removed from the apparatus and the layer or cone of fur stripped therefrom.

Before us, as illustrative exhibit 4, is an exhibit illustrating the condition of the fur at this stage, except, of course, the illustrative exhibit is dry, whereas in actual practice the cone of fur is wet. Illustrative exhibit 4 is very loosely held together and can be very easily picked apart with the fingers. There is testimony that its removal from the metal cone must be done gently in order to avoid damaging it.

The next process has for its purpose the shrinking and compacting of the fur in order to completely interlock the fibers. The first operation of this process is a hand-rolling operation, illustrated by illustrative exhibit 5 in evidence, which exhibit shows a slightly more compact structure than illustrative exhibit 4. This is followed by a similar operation done by a machine called a "starting" machine. It is then "crozed" and then put into a "multi-roller," which is a "fulling" machine. An intermediate state in the fulling is shown by illustrative exhibit 6, which has a tighter and more compact structure than illustrative exhibits 4 and 5.

In all of these fulling operations, there is a progressive compacting of the material of the article. At the end of the fulling operation, the hoods have the size and shape and structure of exhibits 1, 2, and 3, but not necessarily the color, luster, or hardness of those exhibits. These attributes are added by finishing operations, including blocking, and which may include dyeing.

In the opinion of a witness of experience in the millinery manufacturing industry offered by the plaintiffs, felt does not exist in the hoods at bar until after the fulling operation, at which time the article also becomes a hood. In the opinion of similarly well-qualified witnesses offered by the defendant, felt exists after the forming operation and before the fulling operation, i. e., when the articles are in the condition of illustrative exhibit 4.

According to Webster's New International Dictionary, 2d edition, 1945, "felt" is defined as —

A cloth made of matted fibers of wool, or wool and fur or hair, fulled or wrought into a compact material by rolling and pressure, with lees or size, without spinning or weaving.

In Funk & Wagnalls New Standard Dictionary, 1942, it is defined as—

Properly, a fabric made by interlocking or compacting wool, fur, or hair, or a mixture thereof, by rolling or pressure, without weaving, often with the aid of glue and heat * * *.

Both of these definitions indicate clearly that rolling, pressure, or fulling is a necessary process before felt comes into existence. These definitions, which, in our opinion, express the common meaning of the term, accord with the testimony offered on behalf of the plaintiffs. We are satisfied from the record that felt did not come into existence in the articles at bar until the conclusion of the fulling operations, at which time the articles also became hoods. Fur felt was, therefore, not preexistent to the making of the hoods in the case at bar.

We, therefore, hold that the hoods at bar were not "composed wholly or in chief value of fur felt," as that term is used in paragraph 1526 (a), as modified, *supra*. The claim in each of the protests for duty at the appropriate rates according to the per dozen value of the hoods under the provision in paragraph 1526 (a), as modified by the General Agreement on Tariffs and Trade, for hoods, composed wholly or in chief value of fur of the rabbit, beaver, or other animals, is, therefore, sustained, and judgment will issue accordingly.