(Reap. Dec. 9544)

ELLIS K. ORLOWITZ CO. *v*. UNITED STATES

Entry No. 4767.

(Decided November 20, 1959)

*Sharp & Bogan* (*James R. Sharp* and *Raoul Berger* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: In this cause of action, the jurisdiction of the court was invoked by an appeal for a reappraisement filed pursuant to section 210 of the Antidumping Act of 1921, as amended, and section 501 of the Tariff Act of 1930 (19 U.S.C. § 1501).

Plaintiff challenges the appraiser's application of the so-called dumping clause of said act to an importation of cast-iron soil pipe other than so-called "American pattern" exported from the United Kingdom and entered at the port of Philadelphia, Pa., claiming that the dumping order of the Secretary of the Treasury is invalid, null, and void.

The appraiser's finding of value in accordance with the provisions of section 402 of the Tariff Act of 1930 is not in controversy. The sole question presented here is confined to the validity of the dumping order.

The appraisement was made after a finding of dumping by the Acting Secretary of the Treasury, dated October 27, 1955, 90 Treas.

Dec. 354, T.D. 53934, which was filed with the Division of the Federal Register November 2, 1955, and published in the Federal Register November 3, 1955, 20 F.R. 8269.

The claims of adversary parties, as stated in their briefs, are as follows:

Plaintiff contends—

1. The underlying determination by the United States Tariff Commission that six producers of cast-iron soil pipe in California constituted the injured industry did not satisfy the statutory requirement of a determination of injury to an "industry," meaning the entire domestic cast-iron soil pipe industry.

2. The Secretary's finding does not recite the required "determination" of said Commission but substitutes his own incorrect version.

The Government (defendant) contends—

1. The determination of the United States Tariff Commission, as to injury, does satisfy the statutory requirements.

2. The Secretary's finding of dumping does likewise satisfy the requirements.

### THE STATUTE

Section 201(a) of the Antidumping Act of 1921 (19 U.S.C. § 160(a)), as amended by the Customs Simplification Act of 1954, 89 Treas. Dec. 242, T.D. 53599, reads as follows, certain parts being stressed:

SEC. 201(a)  Whenever the *Secretary* of the Treasury (hereinafter called the "Secretary") *determines* that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its fair value, *he shall so advise the United States Tariff Commission,* and the said *Commission shall determine* within three months thereafter *whether an industry in the United States* is being or is likely to be *injured,* or is prevented from being established, by reason of the importation of such merchandise into the United States.  The said *Commission,* after such investigation *as it deems necessary,* shall *notify the Secretary of its determination,* and, if that determination is in the affirmative, the *Secretary* shall make public a *notice* (hereinafter in this Act called a "finding") *of his determination and the determination of the said Commission.*  The Secretary's finding shall include a description of the class or kind of merchandise to which it applies in such detail as he shall deem necessary for the guidance of customs officers.

\*        \*        \*        \*        \*        \*        \*

In the original Antidumping Act of 1921 (42 Stat. 11), Congress delegated to the Secretary of the Treasury authority to make such investigation "as he deems necessary" and if he found that an industry of the United States was being, or likely to be, injured or prevented from being established by reason of the importation into the United States of a class or kind of foreign merchandise which was being sold or likely to be sold in the United States or elsewhere at less than

its fair value, he was authorized to make such finding public to the extent "he deems necessary * * * for the guidance of the appraising officers."

The italicized portion of the amended statute above quoted discloses that the determination of injury to an industry in the United States has been transferred from the Secretary to the Commission. If the Commission, after such investigation "as it deems necessary" determines that an industry is being injured or likely to be injured or is prevented from being established by reason of the importation of certain foreign merchandise into the United States, it shall notify the Secretary of its determination and the Secretary shall then make public a notice (called a "finding") of his determination and the determination of the Commission.

The record in the instant case consists of certain stipulated facts as well as several documentary exhibits, some of which were marked for identification only.

The testimony of Ellis K. Orlowitz, the owner of plaintiff company, was also introduced. A motion to strike his testimony was taken under advisement by the trial judge and, in view of the conclusion of the court herein, said motion is granted.

The pertinent portion of the determination of the Tariff Commission (exhibit 6) reads:

After investigation in accordance with the provisions of section 201(a) of the Antidumping Act, 1921, as amended, including a public hearing, *the Commission*, by a majority vote (Commissioners Brossard, Talbot, and Dowling), *has determined* that a domestic industry in the United States is being, or is likely to be, injured by reason of the importation of cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom at less than fair value.

The domestic *industry* to which the Commission's determination of injury relates was held to consist of the *producers* of cast iron soil pipe *in the State of California* (Commissioner Sutton dissenting). Commissioners Sutton and Jones disagreed with the majority of the Commission's finding that the California producers of cast iron soil pipe are being, or are likely to be, injured by reason of the importation of cast iron soil pipe from the United Kingdom at less than fair value.

Commissioner Schreiber, who, after participating in the hearing, was called to the West Coast because of illness in the family, has advised the Commission of his views in this case, and they are in accord with the views of the majority. [Italics added.]

The determination of the Secretary (exhibit 7) reads:

After due investigation, in accordance with the provisions of section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. 160(a)), the United States Tariff Commission on October 26, 1955, notified the Secretary of the Treasury of its determination that *the industry* manufacturing cast iron soil pipe *in the United States* is being, or is likely to be injured, by reason of the importation into the United States of cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom.

Pursuant to the provisions of said section 201(a) of the Antidumping Act of 1921, as amended, I find that cast iron soil pipe, other than "American pattern" cast iron soil pipe, from the United Kingdom is being, or is likely to be, sold in the United States at less than its fair value.

Due consideration has been given to the well-prepared briefs of the parties to this proceeding and to the authorities cited therein.

Deemed by the court to be dispositive of the instant controversy are the cases of *Kleberg & Co. (Inc.)* v. *United States*, 21 C.C.P.A. (Customs) 110, T.D. 46446, and *United States* v. *George S. Bush & Co., Inc.*, 310 U.S. 371.

The *Kleberg* case, *supra*, involved the applicability of antidumping duties to an importation of safety matches of the "strike-on-the box" variety. On appeal to the Court of Customs and Patent Appeals, appellant assigned various grounds of error of which two bear a striking analogy to the situation presented in the instant case. They are (1) "that the Secretary of the Treasury had no facts before him upon which he was justified in issuing the antidumping order in question"; and (2) "that the court below erred in not finding that it could judicially investigate the facts which were the basis of the Secretary's order."

After a review of the facts in the *Kleberg* case, the appellate court stated as follows—

It appears, therefore, that the Secretary of the Treasury did make such investigation as he thought necessary; that he did find that an industry in the United States, namely, the business of manufacturing safety matches of the strike-on-box type in the United States, is being, or is likely to be, injured by reason of the importation into the United States of matches of that type from Austria; that such goods "have been sold," or are likely to be sold in the United States at less than their fair value.

It further appears that he made such finding public to the extent he deemed necessary, together with a description of the merchandise to which it applied, in such detail as was necessary for the guidance of the appraising officers.

Thus every statutory step required by the law was taken by the Secretary and customs officials in imposing the antidumping duty here involved.

The court also pointed out that—

It is equally well established by the authorities that if the Secretary of the Treasury has proceeded in the method prescribed by the Congress, we may not judicially inquire into the correctness of his conclusions. The constitutionality of the law under which he proceeds having been once determined, then the judicial power extends only to a correction of his failure to proceed according to and within the law. *United States* v. *Sears, Roebuck & Co., supra* [20 C.C.P.A. (Customs) 295, T.D. 46086]; *Clarke* v. *United States*, 17 C.C.P.A. (Customs) 420, T.D. 43866; *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T.D. 42058; *United States* v. *Central Vermont Railway Co.*, 17 C.C.P.A. (Customs) 166, T.D. 43474.

This being the state of the law, we are not at liberty here to go into an investigation as to whether the facts shown on the trial below justified the issuance of the order complained of. Under the statute, the Secretary was not

confined to any particular source of information or means of investigation. Furthermore, such information as he might obtain was not open to public inspection, unless he felt that the public interest so required. *Norwegian Nitrogen Products Co.* v. *United States*, 20 C.C.P.A. (Customs) 27, T.D. 45674, affirmed in 288 U.S. 294.

The *Bush* case, *supra*, lends itself with compelling force to the doctrine set forth in *Kleberg*. In the *Bush* case, the President of the United States, acting on a report and recommendation of the Tariff Commission pursuant to the flexible tariff provisions of the Tariff Act of 1930, proclaimed an increase of duty upon a Japanese product to equalize the difference between Japanese and United States cost of production which was determined on the weighted average of the invoice prices or values for a representative period.

It was contended by respondent therein that the conversion from yen into dollars at the average rate of exchange for the year 1932 was illegal on the ground that by this action the Tariff Commission had obtained a value which did not represent the cost of production in what the statute referred to as a "representative period."

The Supreme Court, in the course of its opinion, stated—

The powers which Congress has entrusted to the President under the Act of 1930 do not essentially differ in kind from those which have been granted him under the tariff acts for well over a century. * * * And the judgment of the President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment.

Further, the court observed—

* * * It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. *Martin* v. *Mott*, 12 Wheat. 19; *Monongahela Bridge Co.* v. *United States*, 216 U.S. 177; *Dakota Central Telephone Co.* v. *South Dakota*, 250 U.S. 163; *United States* v. *Chemical Foundation, Inc.*, 272 U.S. 1. As stated by Mr. Justice Story in *Martin* v. *Mott*, *supra*, pp. 31–32: "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."

In view of the established doctrine of the *Kleberg* and *Bush* cases giving finality to the acts of public officers who have been endowed by Congress with discretionary powers, the court has disregarded portions of the record other than those deemed necessary to determine whether the jurisdictional requirements of the Antidumping Act, as amended, have been complied with. In other words, the court has not, in the exercise of its judicial function, inquired into the mental operations or the correctness of the conclusions arrived at by the Commission.

The procedure followed herein by the Secretary of the Treasury and the Tariff Commission discloses that the method outlined in section 201

of the Antidumping Act, *supra*, has been complied with.   As a matter of fact, the complaint of the plaintiff herein is confined to the validity of the "determinations" of the Secretary and of the Commission, which, if invalid, would nullify the dumping order.

As pointed out earlier in this opinion, the authority which originally resided in the Secretary to determine whether an industry was being injured pursuant to the basic Antidumping Act of 1921 was transferred to the Tariff Commission.

Plaintiff vigorously contends that the Secretary fatally erred in not adequately reporting the determination of the Commission.   When the notice or finding of the Secretary (exhibit 7) is read in conjunction with the report of the Commission (exhibit 6), it is quite obvious that the Secretary fully and correctly reported not only his own determination but that of the Commission as well.   Any other interpretation of the Secretary's report would require a refinement in semantics not justified by the facts of record.

The Secretary, in making public a "finding of his determination," recites that the Tariff Commission notified the Secretary "of its determination that the industry manufacturing cast iron soil pipe in the United States is being, or is likely to be injured."   This is clearly a report of the determination of the Commission required by the statute.

Plaintiff somewhat confuses the issue by taking the second paragraph of the "determination" of the Tariff Commission out of context.

It will be observed that in the first paragraph of the Commission's determination it specifically states it had determined that a domestic industry in the United States "is being, or is likely to be, injured," and so forth.   The second paragraph is merely descriptive of the domestic industry upon which the Commission's determination is predicated.

The statement of the Tariff Commission in its report to the Secretary of the Treasury that "The domestic industry to which the Commission's determination of injury relates was held to consist of the producers of cast iron soil pipe in the State of California" is not a matter for judicial inquiry.   The reason for selecting the California producers was the sole concern of the Commission.

Furthermore, plaintiff's contention that the Commission's investigation of the producers in California is not a sufficient compliance with the statute is answered in the *Kleberg* case, which declares that "It is * * * well established by the authorities that if the Secretary of the Treasury has proceeded in the method prescribed by the Congress, we may not judicially inquire into the correctness of his conclusions."   In the instant case, the court substitutes the "Tariff Commission" for the "Secretary of the Treasury" in the above quotation.

Upon the record before it, the court makes the following findings of fact:

1. The involved merchandise consists of cast-iron soil pipe, other than so-called "American pattern," exported from the United Kingdom and entered at the port of Philadelphia.

2. Appraisement of the merchandise pursuant to the provisions of section 402 of the Tariff Act of 1930 is not contested, the only question presented being the validity of the dumping order, the subject of this proceeding.

3. On July 26, 1955, the Acting Secretary of the Treasury, in accordance with section 160(a) of the Antidumping Act, 1921, as amended, advised the United States Tariff Commission that cast-iron pipe from the United Kingdom was being, or was likely to be, sold in the United States at less than its fair value.

4. On August 5, 1955, the Tariff Commission caused to be published in the Federal Register (20 F.R. 5667) a notice of the institution of an investigation under the Antidumping Act to determine whether an industry in the United States was being, or was likely to be, injured by reason of the importation of such merchandise into the United States.

5. On October 7, 1955, the said Commission caused to be published in the Federal Register (20 F.R. 7518) a notice that a public hearing in the said investigation would be held beginning October 21, 1955.

6. On October 21, 1955, the Tariff Commission held a public hearing.

7. On or about October 26, 1955, the said Commission notified the Secretary of the Treasury that the Commission had determined that a domestic industry in the United States was being, or was likely to be, injured by reason of the importation of cast-iron soil pipe, other than "American pattern" cast-iron soil pipe, from the United Kingdom at less than fair value.

8. On October 27, 1955, the said Acting Secretary of the Treasury issued a finding of dumping (20 F.R. 8269), wherein he recited that the United States Tariff Commission had notified the Secretary of the Treasury of its determination that the industry manufacturing cast-iron soil pipe in the United States was being, or was likely to be, injured by reason of the importation into the United States of cast-iron soil pipe, other than "American pattern" cast-iron soil pipe, from the United Kingdom.

9. Accordingly, the instant importation was appraised pursuant to the Antidumping Act of 1921, as amended, *supra*.

As matters of law, the court concludes—

1. The appraiser's return of "foreign market value" and "purchase price," pursuant to the Antidumping Act of 1921, as amended, was made in accordance with a valid finding of dumping published by the Secretary of the Treasury in conformity with the statutory requirements.

2. The determination of the Secretary and of the Tariff Commission are not subject to judicial review, it appearing that the jurisdictional requirements of the statute have been complied with.

3. The values returned by the appraiser as to "foreign market value" and "purchase price" within the provisions of the Antidumping Act of 1921, as amended, are affirmed.

4. The values returned by the appraiser pursuant to the provisions of section 402 of the Tariff Act of 1930, as amended, are also affirmed.

Judgment will be entered accordingly.