**JACQUES ISLER CORP.**

v.

**UNITED STATES.**

**C.D. 3909; Protest 66/47171–6774–65.**

United States Customs Court,
First Division.

Oct. 27, 1969.

Brooks & Brooks, New York City (Eugene F. Blauvelt and J. Joseph McDermott, Washington, D. C., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff and Velta A. Melnbrencis, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

The merchandise in this protest consists of hoods for women's hats, invoiced as "La Vienne flare hoods" and "Musketeer capelines". It was imported from Austria on June 21, 1964. The "Vienne flare hoods" were classified as "Headwear, of fur felt", under item 703.50 of the Tariff Schedules of the United States, and duty was assessed at the rate of 40 per centum ad valorem. The "Musketeer capelines", also classified as "Headwear, of fur felt", were assessed duty at the rate of $6.80 per dozen plus 10.5 per centum ad valorem under item 703.55 of the Tariff Schedules of the United States.

The plaintiff claims that the merchandise should be classified as "Other headwear" under item 703.75 of the Tariff Schedules of the United States, and assessed duty at the rate of 17.5 per centum ad valorem.

The following are the pertinent provisions of the Tariff Schedules of the United States as found in schedule 7, part 1:

"Subpart B.—Headwear and Hat Braids

\* \* \* \* \* \* \*

Headwear, of fur felt:

\* \* \* \* \* \* \*

For other persons:

\* \* \* \* \* \* \*

| 703.50 | Valued over $24 but not over $30 per dozen ........................ 40% ad val. |
| 703.55 | Valued over $30 per dozen .......... $6.80 per doz. + 10.5% ad val. |

\* \* \* \* \* \* \*

| 703.75 | Other headwear ...................... 17.5% ad val." |

Factually, there is no question that the merchandise consists of "fur felt hoods". Indeed, one of plaintiff's witnesses, in cross-examination, testified that the articles are referred to in the trade as "felt hoods". The legal problem of proper classification stems from the fact that the articles are made from hare's fur clipped from the skin. The imported hoods are composed wholly of loose fur fibers, and after a series of manufacturing operations the felt and the hood are made at the same time.

Accordingly, the plaintiff relies on the "preexisting material" doctrine of customs law. That doctrine refers to the rule of construction that "the language 'made of' or 'manufactured of' presupposes that the material of which the article is made or manufactured exists before the article itself comes into existence." Cohn & Lewis v. United States, 25 CCPA 220, 225, T.D. 49335 (1937);

United States v. Accurate Millinery Co. et al., 42 CCPA 229, C.A.D. 599 (1955).

The plaintiff maintains that since the hoods in question were manufactured from individual fur fibers they were not properly classified as "Headwear, of fur felt". It relies primarily upon the *Accurate Millinery Co.* case which held that fur felt hoods were not properly classifiable as hoods "composed wholly or in chief value of fur felt", since there was no separate or independent existence of fur felt prior to the manufactured hood. In the *Cohn & Lewis* case the pertinent statutory language was "manufactured wholly or in part of wool felt". In the *Accurate Millinery Co.* case the statutory language was "composed wholly or in chief value of fur felt". Nonetheless, the appellate court, in the *Accurate Millinery Co.* case, after stating that "the doctrine of preexistence discussed in the *Cohn & Lewis* case, *supra,* is rather parallel to what our holding should be here, if not controlling", concluded that:

> "It seems to us that the language in the two cases must be considered as being interchangeable and, since that is the case, it follows that there must be a preexistence of fur felt here just as preexistence of wool felt was required in the *Cohn & Lewis* case, *supra.*" United States v. Accurate Millinery Co. et al., 42 CCPA at 233–234.

The *Accurate Millinery Co.* case thereby added the words "composed of" to the list of words such as "made of" or "manufactured of", which, under the preexisting material doctrine, require that the material of which the article is made or manufactured is to have a prior, separate and independent existence.

The relevance of the preexistence doctrine is therefore obvious since the felt had no existence prior to the manufactured article itself, i. e., the hood. Plaintiff consequently states that "the only question in issue is a legal one i. e., are the Tariff Schedules of the United States also subject to the same rule of construction that was applied to identical language by the courts in *Accurate Mil-*

*linery, supra,* and the long line of cases cited therein?" Admittedly, the merchandise before the court is similar to, and is manufactured in the same manner as the fur felt hat bodies in the *Accurate Millinery Co.* case.

It must be pointed out, however, that the pertinent language in the *Accurate Millinery Co.* case is not identical to the case presently before the court. Whereas the language in the *Accurate Millinery Co.* case was "composed wholly or in chief value of fur felt", the article description in the case at bar is simply "Headwear, of fur felt".

The defendant contends that the preexisting material doctrine is not applicable to the pertinent provisions of the Tariff Schedules of the United States. It asserts that the legislative history of the Tariff Schedules of the United States, and subsequent congressional committee explanations indicate that the merchandise in issue was intended to be classified under items 703.50 and 703.55.

There can be no doubt that rules of construction are designed to help ascertain and fulfill the intent of Congress. This is of particular importance in customs law since, as stated by the Supreme Court of the United States in Board of Trustees of the University of Illinois v. United States, 289 U.S. 48, 57, 53 S.Ct. 509, 77 L.Ed. 1025 (1933), the "Congress may determine what articles may be imported into this country and the terms upon which importation is permitted." All rules of construction, therefore, are merely aids to interpret statutes in such a manner as to carry out the legislative intent. As stated by this court in C. J. Tower & Sons v. United States, 14 Cust.Ct. 94, 98, C.D. 919 (1945), citing United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927), "[t]he intention of Congress is the all important factor." No statute ought to be construed in a way that, in whole or in part, would defeat "the very purpose of its enactment." See Beley v. Naphtaly, 169 U.S. 353, 361, 18 S.Ct. 354, 42 L.Ed. 775 (1898). There also can be no doubt that when a ques-

tion is raised as to the meaning of congressional language and congressional intent, the courts not only may, but have a duty to examine legislative history as gleaned from pertinent reports. United States v. St. Paul, Minneapolis & Manitoba Railway Company et al., 247 U.S. 310, 318, 38 S.Ct. 525, 62 L.Ed. 1130 (1918). See also Hampton Jr. & Co. v. United States, 12 Ct.Cust.App. 490, T.D. 40695 (1925); United States v. Stone & Downer Co. et al., 16 Ct.Cust.App. 82, 87, T.D. 42732 (1928).

The authority for the application of the preexisting material doctrine, upon which the majority of the court relied in the *Accurate Millinery Co.* case, is the case of Cohn & Lewis v. United States, *supra*. In that case, which first applied the doctrine to wool felt, the question presented was whether certain woolen hat shapes had been properly classified under paragraph 1115(b) of the Tariff Act of 1930 which covered "hoods, forms, and shapes, for hats * * * manufactured wholly or in part of wool felt". The importer protested and maintained that the merchandise was dutiable under paragraph 1115(a) covering "[c]lothing and articles of wearing apparel of every description, not knit or crocheted, manufactured wholly or in part, wholly or in chief value of wool". Based upon its understanding of the applicable legislative intent, this court held that the merchandise had been properly classified. The appellate court reversed and held that, since the wool felt did not exist as an entity until the completion of the hat forms, the hat forms were not "manufactured wholly or in part of wool felt".

In reversing the trial court, the appellate court stated as follows:

"It was the opinion of Presiding Judge McClelland that the trial court should follow the line of cases to which we have heretofore referred, were it not for what he regarded as contrary legislative intent, and cited the decision of this court in United States v. Clay Adams Co., Inc., 20 C.C.P.A. (Customs) 285, T.D. 46078, where it was said: 'All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent.' Proceeding upon this theory, the presiding judge was of opinion that the congressional proceedings, including the report of the Ways and Means Committee, were such as to lead to the conclusion that the Congress was intending to include hat forms, such as those involved here, within said paragraph 1115(b) when the act of 1930 was drawn." Cohn & Lewis v. United States, 25 CCPA at 225–226.

Although the appellate court agreed with the statement of law found in the *Clay Adams Co.* case, it responded as follows to the "theory" of the presiding judge of the trial court in giving effect to what the trial court regarded as "contrary legislative intent":

"* * * it will be observed that the statement is that all rules of construction must yield if there be a contrary congressional intent shown. However, we must still retain in mind the law which is basic, as we view it, that if the language of a statute be plain and unambiguous, the law should be followed as written and it speaks for itself. Where it has so spoken plainly, no need of rules of construction is present, and hence recourse to the proceedings of the Congress and the committee having this legislation in charge, is unnecessary." *Id.* at 226.

The court therefore saw no ambiguity in the language used by Congress and added that "[i]t used language which has been passed upon by this court for twenty-five years, and of which the Congress must have been fully conversant." *Ibid.*

The appellate court's observations and belief, that there had been a legislative acquiescence in the application of the preexisting material doctrine to wool felt, must be read together with the concurring opinion of Judge Bland in the *Cohn & Lewis* case, and the dissenting

opinion of Judge Johnson in the *Accurate Millinery Co.* case.

Judge Bland in the *Cohn & Lewis* case commenced his concurring opinion as follows:

"It is with considerable reluctance that I feel compelled to agree with the conclusion reached by this court in reversing and remanding the judgment of the trial court. This action results in a regrettable anomaly. After studying carefully the legislative history, I do not have the slightest doubt that when Congress framed subdivision (b) of paragraph 1115, it intended to include therein the particular kind of merchandise here involved." 25 CCPA at 226.

His certainty that Congress intended to include the merchandise within paragraph 1115(b) of the Tariff Act of 1930 suggested that the merchandise had been properly classified and that the decision of the trial court was correct. Nevertheless Judge Bland felt compelled to concur and give "force" to the cases cited in the *per curiam* opinion of the court which enunciated the preexisting material doctrine. He felt justified in doing so by his view of what may be termed legislative acquiescence in judicial construction of statutory language. He expressed this conviction in the following terms:

"* * * When Congress wrote the provision it knew of the long line of holdings by this court which requires a conclusion that there must have existed a preexisting wool felt before the hat bodies could be classified under the disputed paragraph. Notwithstanding this fact, Congress deliberately used the phrase 'manufactured wholly or in part of wool felt.'" *Id.* at 227.

In his concluding paragraph Judge Bland stated his belief that the Supreme Court of the United States "might take a different view of this case", and noted:

"* * * Since the opinion delivered by Chief Justice Taft in United States v. Stone & Downer Co., 274 U.S. 225, [47 S.Ct. 616, 71 L.Ed. 1013]

there has been a growing tendency of the courts of this country generally, including the Supreme Court, to liberalize the rule as to what you may consult and what extrinsic facts you may consider in an effort to arrive at the intent of Congress." *Ibid.*

It will be remembered that the majority opinion of the appellate court in the *Accurate Millinery Co.* case relied heavily on the *Cohn & Lewis* case and held the words "composed wholly or in chief value of" to be interchangeable with "manufactured wholly or in part of". The *Accurate Millinery Co.* case therefore required a preexistence of fur felt, just as a preexistence of wool felt was required in the *Cohn & Lewis* case.

In his dissent in the *Accurate Millinery Co.* case Judge Johnson declared:

"* * * I cannot agree with this view. After the decision in the *Cohn & Lewis* case, *supra,* paragraph 1115 (b) was amended by Congress, after hearings, by striking out the word 'manufactured'. * * *" United States v. Accurate Millinery Co. et al., 42 CCPA at 240.

Judge Johnson quoted Amendment No. 68 of Report No. 2677 of the House of Representatives, 75th Congress, 3rd Session, being the Conference Report submitted by Mr. John W. McCormack from the Committee of Conference, which accompanied H.R. 8099, which in turn modified the original paragraph 1115(b) of the Tariff Act of 1930.

Amendment No. 68 of Report No. 2677, dated June 10, 1938, states:

"Existing law, as established by a recent court decision provides that hat bodies and similar articles are dutiable under paragraph 1115(b) of the Tariff Act of 1930 only if made from a material which existed as felt before the bodies and other articles were made. The Senate Amendment provides that the hat bodies and similar articles shall be dutiable under paragraph 1115(b), *as originally intended by the Congress,* if they are in chief value of wool felt, *regardless of the*

*time when the material became felt. The House recedes."* [Emphasis added.]

As a result of the unequivocal expression of legislative intent found in Amendment No. 68 of the Conference Report, Judge Johnson, in his dissent, stated:

" * * * I believe that if, as held by the majority, the terms 'manufactured from' [sic] (the term at issue in the *Cohn & Lewis* case) and 'composed of' (the term in issue in the present case) mean the same thing, then the subsequent change in statutory language of paragraph 1115(b) should provide a yardstick for gauging the meaning of the term 'composed of.' That is, the preexisting material doctrine should have no application in the present situation because of the parallelism of the subject matter and the wording of the two paragraphs under comparison." United States v. Accurate Millinery Co. et al., 42 CCPA at 240–241.

Judge Johnson's concluding paragraph shows profound perception, and is most helpful. He states:

"It may be argued, and logically so, that if Congress wanted to change paragraph 1526(a) [the pertinent paragraph in the *Accurate Millinery Co.* case] to eliminate all doubt as to the applicability of the preexisting material doctrine thereto, it could have done so at the time the wording of paragraph 1115(b) was changed. However, the fact remains that at the time the change in paragraph 1115(b) was made, the preexisting material doctrine had not been applied to paragraph 1526(a) by the courts." *Id.* at 241.

■ Many cases may be cited to illustrate the proposition that the legislature may tacitly adopt or confirm a particular construction that the courts have placed upon statutory language. See Latimer v. United States, 223 U.S. 501, 504, 32 S.Ct. 242, 56 L.Ed. 526 (1912). A most interesting example is found in the case of

Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946), wherein Chief Justice Stone in a dissenting opinion stated that "[i]t is not the function of this Court to disregard the will of Congress in the exercise of its constitutional power." *Id.* at 79, 66 S.Ct. at 834.

Plaintiff, in *Point Heading I*, in its brief, asserts that "the preexistence doctrine pronounced in the case of United States v. Accurate Millinery Co. et al., 42 C.C.P.A.(Customs) 229, C.A.D. 599, is applicable and controlling in the determination of the case at bar." Since it places major reliance on the *Accurate Millinery Co.* case, further examination of that case is required. In that case the customs collector classified the fur felt hoods under paragraph 1526(a) of the Tariff Act of 1930, as modified by Presidential Proclamation No. 2761 A which put into effect the General Agreement on Tariffs and Trade, and Presidential Proclamation No. 2912 which proclamation, in part, terminated the earlier proclamation. Paragraph 1526 (a) of the Tariff Act of 1930 was the predecessor to "Subpart B. Headwear and Hat Braids", of part 1 of schedule 7 of the Tariff Schedules of the United States, which includes items 703.50 and 703.55, pertinent to the case at bar. Paragraph 1526(a) provided for:

" * * * hoods, plateaux, forms, or shapes, for hats * * * composed wholly or in chief value of fur of the rabbit, beaver, or other animals * * *."

In 1947, the rates applicable to hoods under paragraph 1526(a) were modified by Presidential Proclamation No. 2761 A, T.D. 51802. In 1950, Presidential Proclamation No. 2912, T.D. 52600, terminated the prior proclamation to the extent that on or after December 1, 1950, it would be applied as though paragraph 1526(a) of the Tariff Act of 1930 were to read as follows:

" * * * hoods, plateaux, forms, or shapes, for hats, * * * composed wholly or in chief value of fur of the

rabbit, beaver, or other animals (except any of the foregoing hats * * and hoods, for women's wear, including bodies, hoods, plateaux, forms or shapes, for women's hats * * * composed wholly or in chief value of fur felt * * *)"

In effect, as a result of a Tariff Commission investigation, and in accordance with provisions of the General Agreement on Tariffs and Trade, the second proclamation terminated and withdrew the tariff concessions pertaining to hoods or shapes for women's hats "composed wholly or in chief value of fur". By the application of the preexisting material doctrine, however, the courts in the *Accurate Millinery Co.* case did not classify the fur felt hoods under the exception of the later proclamation pertaining to "hoods * * * composed wholly or in chief value of fur felt".

Proclamation No. 2912, T.D. 52600, was issued as a result of findings of the Tariff Commission made in a report to the President issued on September 25, 1950. Tariff Commission Report to the President, No. 170, Second Series. The relevant findings, which are set forth in Judge Johnson's dissenting opinion in the *Accurate Millinery Co.* case, indicate the reason for the withdrawal of tariff concessions to "hoods, * * * for women's hats, * * * composed wholly or in chief value of fur felt". The reason given referred to unforeseen developments whereby such articles were "being imported into the United States in such relatively increased quantities and under such conditions as to cause serious injury to the domestic industry producing like or directly competitive products, and as to threaten continuance of such serious injury." 42 CCPA at 236–237.

Since the Tariff Commission report clearly sets forth the reason for the withdrawal of the particular concessions mentioned, Judge Johnson was of the opinion that "the term 'composed of fur felt' which appears in T.D. 52600 is not a limitation pertaining to how the import-ed hoods were manufactured, but is a term of identification or description which describes what the articles actually are regardless of their manner of fabrication." *Id.* at 240.

At this juncture it is germane to refer to a Tariff Classification Study of November 15, 1960. The Customs Simplification Act of 1954, P.L. 83–768, 68 Stat. 1136, directed the Tariff Commission to make a comprehensive study of the laws prescribing the tariff status of imported articles and to submit to the President and to the chairmen of the Committee on Ways and Means of the House of Representatives, and the Committee on Finance of the Senate a revision and consolidation of those laws, that, in the judgment of the Commission, would accomplish to the extent practicable the following purposes:

"(1) Establish schedules of tariff classifications which will be logical in arrangement and terminology and adapted to the changes which have occurred since 1930 in the character and importance of articles produced in and imported into the United States and in the markets in which they are sold.

(2) Eliminate anomalies and illogical results in the classification of articles.

(3) Simplify the determination and application of tariff classifications." Tariff Classification Study, Submitting Report 1 (1960).

On March 15, 1955, the Tariff Commission submitted an interim report which was confined to the treatment of the fundamental problems underlying the simplification of the tariff schedules, the principles that the Commission would follow in effecting the proposed revision of them, and the methods for putting the proposed revision into force and effect. *Ibid.*

In a section devoted to "tariff terminology" the Report discusses classification of articles by component material, and states that the description of articles appears in a variety of forms such as "composed wholly or in chief value of

_____," "manufactures in chief value of _____." Tariff Classification Study, Submitting Report, Appendix A, Interim Report of March 15, 1955, 48–49 (1960). The Commission then states:

"The foregoing method of tariff description has resulted in disputes, and there are also instances where unanticipated results have been produced.[22] * * * " *Id.* at 49.

In footnote 22 the Commission gives, as an example, the trial court's decision in Accurate Millinery Co. et al. v. United States, 33 Cust.Ct. 191, C.D. 1652 (1954). It states:

"For example, in a recent case (C. D. 1652) decided Nov. 10, 1954, by the U. S. Customs Court, the term 'composed wholly or in chief value of fur felt' was so construed that it will, if not reversed on appeal, produce unanticipated results. In this case, the court applied the judicially created rule of 'preexisting material' which resulted in a distinction being made between 'wholly or in chief value of' and 'composed wholly or in chief value of'—a *distinction which if upheld in the case cited would nullify the intended increase in rates of duty proclaimed by the President,* as a result of an escape-clause investigation by the Tariff Commission, on certain women's fur felt hoods, dutiable under par. 1526(a), Tariff Act of 1930, as modified." *Ibid.* [Emphasis added.]

The Tariff Classification Study also indicates that the Tariff Commission believed that only words such as "composed of", "made of", and "manufactured from" had been "held to require that the material preexist as such before it is made into the article". Tariff Classification Study, Submitting Report 12 (1960). The Commission was also of the opinion that "words connoting the preexistence of component materials have been avoided." *Id.* at 13.

Since it cannot be disputed that the Tariff Commission regarded the trial court decision in the *Accurate Millinery*

*Co.* case to be contrary to the intent of the relevant Presidential Proclamation, it is not surprising that it would attempt to change what, in its revision and consolidation of the tariff laws, it termed an "unanticipated result".

In addition to the *Accurate Millinery Co.* case, the plaintiff also relies upon General Headnote 10(a) of the Tariff Schedules of the United States for the application of the preexisting material doctrine to the case at bar. General Headnote 10(a) provides:

"(a) the general, schedule, part and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings."

Plaintiff has emphasized the last clause pertaining to "administrative or judicial rulings". Suffice it to say that the words "not inconsistent therewith", are equally important. Furthermore, the language before the court is not identical to that of the *Accurate Millinery Co.* case. That case is therefore not authority "controlling in the determination of the case at bar."

Plaintiff also cites General Headnote 9(f) (i) which states that " 'of' means that the article is wholly or in chief value of the named material". Surely this definition of the word "of" refutes rather than strengthens plaintiff's contention. Furthermore, in view of the previously quoted statements of the Tariff Commission, plaintiff cannot properly have one infer or assume that such language was intended or designed to adopt the preexisting material doctrine. The opposite is the fact.

█ The merchandise at bar was imported when the superior heading read "Headwear, of fur felt" The legal arguments that have been generated by this otherwise simple language fully war-

rant the efforts of the court to ascertain the legislative intent from all pertinent sources. If there is any lingering doubt, as to whether it was the legislative intent to apply the preexisting material doctrine to the case at bar, one need only read a portion of a report from the Committee on Ways and Means of the House of Representatives on a bill entitled Tariff Schedules Technical Amendments Act of 1965 which became Public Law 89–241. Section 49 of that report states:

"This section changes the words 'fur felt' in the principal superior heading to items 703.20–703.55 to 'fur not on the skin.' This change is for clarification purposes only, to avoid any possible question as to the coverage intended by the words 'Headwear of fur felt.' The word 'of' is used in a defined sense to mean 'wholly or in chief value of' and as such *does not connote* a preexistence of the material—fur felt. The change to 'headwear, of fur not on the skin' makes the description consistent with the terminology used in item 186.20 which provides for 'fur, not on the skin' and in item 703.60 which provides for 'headwear, of fur on the skin.' " H. Rep.No.342, 89th Congress, 1st Session. (Tariff Schedules Technical Amendment Act of 1965), p. 35 (May 12, 1965). [Emphasis added.]

It would seem clear that the change mentioned in the quoted paragraph is "for clarification purposes only", since it merely reiterates the intent expressed by the Tariff Commission in the interim report and its submitting report referred to previously herein. Since it merely confirms previously expressed views, at the time of the enactment of the tariff schedules, it may properly be considered on the question of legislative intent as to the pertinent items presently before the court. See Ellis K. Orlowitz Co. v. United States, 47 Cust.Ct. 583, 590, A.R.D. 136, mod'g 43 Cust.Ct. 548, R.D. 9544, aff'd, 50 CCPA 36, C.A.D. 816 (1963).

Surely this is not a case where it may be said that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960). Rather they confirm a prior legislative intent that the preexistence material doctrine not be applied to the legislative language "Headwear, of fur felt" which is pertinent to the case at bar.

In view of the foregoing, the court holds that the merchandise in this case was properly classified as "Headwear, of fur felt" under the appropriate items of the Tariff Schedules of the United States. Since plaintiff has not borne its burden of proving that the merchandise in question should have been classified as "Other headwear" under item 703.75, the protest is overruled. Judgment will issue accordingly.