UNITED STATES v. VANDIVER.

(Circuit Court, E. D. Pennsylvania. May 29, 1903.)

No. 47.

1. CUSTOMS DUTIES—FREE LIST—BOOKS FOR LITERARY CLUBS.

The Tariff Act July 24, 1897, par. 503, 30 Stat. 196, c. 11 [U. S. Comp. St. 1901, p. 1681], admits free of duty books specially imported for the use or by order of any society or institution incorporated or established solely for literary pursuits or for the encouragement of the fine arts. The charter of a club provided that it was formed "as a permanent social club, for the promotion of literary, artistic and antiquarian tastes among the citizens of P., and such kindred purposes as the club may from time to time determine, by establishing and maintaining a library and reading room, and a collection of works of art and antiquities, either by loan or otherwise." It appeared that while the club maintained a well selected and valuable library, etc., its social side was fully as prominent as its literary or artistic side. *Held*, that books for the club were not admissible free of duty.

Wm. M. Stewart, Jr., and James B. Holland, for the United States.
Thomas De Witt Cuyler, for defendant.

J. B. McPHERSON, District Judge. The books now in question are an art publication imported by the defendant for the Rittenhouse Club, of Philadelphia. They were assessed by the collector at 25 per cent. ad valorem, under paragraph 103 of the act of 1897 (Act July 24, 1897, 30 Stat. 151, c. 11 [U. S. Comp. St. 1901, p. 1634]), but were admitted free of duty by the board on the ground that the club was fairly within the purview of paragraph 503 [U. S. Comp. St. 1901, p. 1681], which admits free of duty "books  *  *  *  specially imported  *  *  *  in good faith, for the use or by order of any society or institution incorporated or established solely for  *  *  *  literary pursuits or for the encouragement of the fine arts." From this decision the collector appealed, and a good deal of testimony has been taken concerning the objects and character of the club. Its charter provides that the corporation is formed "as a permanent social club, for the promotion of literary, artistic and antiquarian tastes among the citizens of Philadelphia, and such kindred purposes as the club may from time to time determine, by establishing and maintaining a library and reading room, and a collection of works of art and antiquities, either by loan or otherwise." A careful consideration of the testimony leaves me in no doubt that the club has kept these purposes in mind. An unusually well selected and valuable library has been collected. Reading rooms are maintained in the club's building, and works of art, mainly loaned by members, are in its possession. In addition, an art exhibition is held each year, the pictures and other objects being loaned for the purpose, and some encouragement is given in other ways to literary pursuits. But while this is true, the testimony leaves me also in no doubt that the club cannot possibly be said to be established "solely" for literary pursuits or for the encouragement of the fine arts. Without going into details, it is enough to say that the evidence shows beyond successful dispute, as I think, that the club belongs to the class of social clubs, differing from them only in the fact that it pays more attention to its library than does the ordinary social club, and pays somewhat more attention, also, to the encouragement of art and artistic pursuits. Its social side is at present quite as prominent, to say the least, as is its literary and artistic side. While I must admit frankly that I came to the consideration of this case with a predisposition in favor of the decision of the board, I find that the evidence has made it impossible for me to come to the same conclusion. It is not the charter of a corporation alone that determines its character. What the corporation does must also be taken into account, as was said concerning the very clause now under consideration by the Circuit Court of Appeals for the First Circuit in Massachusetts General Hospital v. United States, 50 C. C. A. 417, 112 Fed. 670: "The scope of the exemption clause is to be ascertained by reference to the purpose of the institution, and to what it does." What the club may do in the future, now that its facilities for carrying out the purposes stated in its charter are so much improved, is, of course, a matter that cannot be foreseen. If it should hereafter be made to appear that the objects stated in the charter have really become the principal objects of the corporate activity, and that the social features

of the club have become merely incidental, no doubt it would then come within the spirit of paragraph 503. At present, however, it seems clear to me that the social side of the club cannot be properly described as merely incidental, but is one of its principal purposes, not subordinate to the promotion of literary, artistic, and antiquarian tastes in the community.

The decision of the board must be set aside.