(C.D. 2451)

E. F. Philbin *v.* United States

United States Customs Court, Second Division

(Decided May 4, 1964)

*Philip Gensler* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Harold L. Grossman* and *Herbert L. Warren,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Rao, Judge: Plaintiff, a customhouse broker, imported certain items of merchandise for the account of the Syntax Society, a non-profit corporation incorporated under the laws of Louisiana. Included in the importations were the following articles:

Carnival masks, assessed with duty at the rate of 20 per centum ad valorem, as manufactures, wholly or in chief value of cotton, as provided in paragraph 923 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential proclamation, 90 Treas. Dec. 280, T.D. 53877;

metal cups, assessed with duty at the rate of 50 per centum ad valorem within the provisions of paragraph 339 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as hollowware, not specially provided for, plated with gold;

diadems and necklaces, assessed with duty at the rate of 55 per centum ad valorem, as jewelry, commonly or commercially so known, valued over 20 cents per dozen pieces, in paragraph 1527(a) of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802; and

sceptres, assessed with duty at the rate of 35 per centum ad valorem, as articles designed to be carried on or about the person, valued over $5 per dozen pieces, within the purview of paragraph 1527(c)(2) of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

Each of the three protests here involved, which have been consolidated for purposes of trial, is limited to the claim that the items in issue should have been accorded free entry as regalia, within the purview of paragraph 1773 of said Tariff Act of 1930, as amended by T.D. 54609. Nevertheless, counsel for plaintiff, in his opening statement and in questioning the witnesses called in behalf of plaintiff, laid some stress upon the apparent contention that the articles invoiced as diadems and necklaces are not jewelry, commonly or commercially so known, within the contemplation of paragraph 1527(a), as modified,

*supra.* Since, as submitted for decision, the claim of plaintiff as stated in the protests has not been enlarged, no further consideration will be given to this aspect of the case.

Paragraph 1773, *supra*, which is, therefore, the only provision here in contention, reads as follows:

Statuary and casts of sculpture for use as models or for art educational purposes only; regalia and gems, where specially imported in good faith for the use of, either by order of or for presentation (without charge) to any society incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or for the use of, either by order of or for presentation (without charge) to any college, academy, school, seminary of learning, orphan asylum, or public hospital in the United States, or any State or public library, and not for sale, subject to such regulations as the Secretary of the Treasury shall prescribe; but the term "regalia" as herein used shall be held to embrace only such insignia of rank or office or emblems as may be worn upon the person or borne in the hand during public exercises of the society or institution; and shall not include articles of furniture or fixtures, or of regular wearing apparel, nor personal property of individuals.

The two witnesses who testified in behalf of plaintiff had each served in the capacity of chief officer or captain of the Syntax Society. The first of these, Judge George Janvier, a retired member of the judiciary of the State of Louisiana, was, for some 25 years, head of the organization. He, as well as Hughes Walmsley, the captain who succeeded him, was completely familiar with all of the activities of the society, and of the so-called Comus organization through which the Syntax Society operates. It appears from the combined testimony of these witnesses that the sole function of both organizations is to produce a carnival parade and ball, known as the Comus parade and ball, on the last day of the Mardi Gras season in New Orleans, as a sort of climax to the season, and that every year, since 1857, with the exception of wartime or national emergency, these events have been produced under the auspices of the Syntax Society.

The witnesses described in detail the colorful spectacle of the Comus parade, disclosing that each year a special theme is selected for illustration and representation by the 17 floats which form part of the parade. In addition to the floats, the parade comprises bands, marching units, and flambeau and torch carriers, and perhaps a total of 1,000 persons participate in the parade. Of these, some 150 are members of the Syntax Society, and they are the persons who wear the masks which are here involved. Both witnesses were of opinion that the parade theme has educational value and tends to encourage the fine arts in presenting for public view authentic representations of the central theme which is always selected for its artistic and educational worth, as for example the following subjects of prior parades:

1962—"The Gardens of Cashmere"
1917—"Romantic Legends"

1907—"Tennyson"
1930—"The Legend of Faust"
1963—"The World of Mark Twain"
1952—"Bible Stories We All Know"
1915—{ "Legends of Childhood"
{ "Pageant of Mystick Krewe of Comus"
1935—"Insect Life"

Pictures of the floats in the two last-mentioned parades are in evidence as plaintiff's exhibits 3 and 2, respectively.

The parade apparently lasts about 2½ hours, during which time it proceeds over a set route along the streets of the City of New Orleans, and is generally viewed by about 500,000 people. The parade ends at the Municipal Auditorium, where the ball takes place.

The masks which are worn by the paraders are discarded after the parade and are not used again, since frequently they are slit to provide larger spaces for seeing and breathing. New masks are furnished those members who also participate in the ball. These are also discarded after the ball ends. Plaintiff's exhibit 4 is a mask in its condition as imported. Plaintiff's exhibit 5 is a mask which has been slit, and to which a stronger elastic band has been attached.

Attendance at the ball, which is not limited to members of the society, is by invitation only. Invitations are generally extended to about 5,200 people of whom perhaps 2,800, which would represent the seating capacity of the Municipal Auditorium, the largest available hall for the function, actually attend.

The other items in issue are appurtenances for the king and queen of the ball. The king wears a crown and carries a cup. The queen wears a crown, of the type shown on a photograph in evidence as plaintiff's exhibit 1, and a necklace and carries a sceptre. These articles, which are symbolic of their respective positions at the ball, are used only in connection with that function, although they are on display for a short period before the event. Thereafter, they are given to the king and queen as personal mementos and may never again be used in a public exhibition.

For the past several years, the last half-hour of the Comus ball has been televised, and, to that extent only, it is viewed by the public. The parade, on the other hand, is generally televised.

It further appears that the Syntax Society is supported solely by dues of and contributions from its membership and that it makes no charge for any of the performances which it sponsors.

The masks, crowns, necklace, cup, and sceptre are the articles which are claimed to be "regalia," within the contemplation of said paragraph 1773. It is the contention of counsel for plaintiff that these items meet the statutory test for regalia embodied in said paragraph, since, allegedly, the record shows that they are for the use of a society

incorporated solely for educational and/or literary purposes; or for the encouragement of the fine arts; and that they are insignia of rank or office worn or carried during public exercises of the society.

Counsel for defendant urges, however, that the statutory test for regalia has not been met in any of its particulars for the following reasons:

1. Neither the Syntax Society, nor its affiliate, the Comus Organization, is incorporated solely for educational or literary purposes or for the encouragement of the fine arts.

2. It has not been shown that the subject articles are such only as may be worn or carried during public exercises of the society.

3. These articles become the personal property of individuals, and

4. The merchandise is not insignia of rank or office.

In view of the precise phraseology of the provision in question, it is obvious that each of the reasons advanced by counsel for defendant relates to a particular statutory condition precedent to the free entry of merchandise, claimed to be regalia, and that all of such conditions must be met if the right accorded by the provision is to be perfected. If, in any respects, there is a failure of compliance with the statutory prerequisites, the claim for free entry must be denied.

While the excellent brief submitted by counsel for defendant appears to justify a rejection of plaintiff's claim on all of the assigned counts, in the light of the evidence hereinabove reviewed, it suffices for the court here to conclude that, predicated upon the instant record, the Syntax Society is not a corporation organized for one of the purposes set forth in the statute.

Although, during the course of the trial, plaintiff's witness Judge Janvier adverted to the charter of the Syntax Society as indicative of its artistic and educational objectives, the document itself was not introduced into evidence, nor does the record contain any direct résumé of the purposes for which the society was incorporated. Actually, the testimony tends to establish only the function which the society performs—namely, the production of the parade and ball—and the witnesses' characterization of that function as educational, literary, and for the encouragement of the fine arts. It does not establish the objectives of the corporation, as outlined in its formal charter.

To qualify as a corporation entitled to claim free entry of regalia, an organization must establish that it has been incorporated *solely* for one of the purposes specified in paragraph 1773, *supra*. And where the stated objectives of a corporation permit it to engage in activities which do not fall within the strict concepts of the enumerated purposes, the statutory language is not satisfied.

Similar language in paragraph 1530 of the Tariff Act of 1922, relating to the importation of books, etc., for the use of institutions "incorporated or established solely for religious, philosophical, educa-

tional, scientific, or literary purposes, or for the encouragement of the fine arts," was held not to embrace a society which, though organized to advance the literary, scientific, and artistic stature of its members, also was organized to promote the social relationships of its members, for the reason that it was not organized *solely* for one of the purposes enumerated in the provision under consideration. *Samuel Shapiro & Co.* v. *United States*, 61 Treas. Dec. 11, T.D. 45369. See also *United States* v. *Vandiver*, 122 Fed. 740, for a similar construction of this provision as it appeared in paragraph 503 of the Tariff Act of 1897.

Whatever educational, literary, or artistic value attaches to a parade formed and conducted to carry out a theme of intellectual proportions; however faithfully the subject is represented in costume, float, and scenic display; however seriously the idea is reported and explained in current news media, it is, nevertheless, our opinion that the primary objective of a parade and ball of the type here described is entertainment and amusement; and that any educational, literary, or artistic merit it may possess is of an incidental nature only. We are of the belief that the efforts expended in organizing and producing carnival parades and balls are not such as may appropriately be characterized as "solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts," within the contemplation of paragraph 1773.

In this connection, we find pertinent the case of *Duquesne University Tamburitzans* v. *United States*, 41 Cust. Ct. 372, Abstract 62355, where free entry as regalia was denied to certain national costumes of Yugoslavia, imported for use in concerts and lectures by a society organized—

To maintain and create scholarships for students of Duquesne University, for this purpose to promote concerts, musicals, dances, and other social functions; to buy, sell, and rent the necessary instruments, costumes and stage equipment; to buy, sell and rent and maintain real property and personal property for the purpose of this corporation.

If a corporation organized to promote concerts to raise funds for university scholarships is not a corporation organized for one of the purposes enumerated in paragraph 1773, *a fortiori*, a corporation organized to produce parades and balls is not such a corporation.

The court commends the lofty ideals of public service and welfare which have for so many years prompted the Syntax Society voluntarily to contribute to the success of New Orleans' great spectacle of the Mardi Gras, but is constrained to hold that participation therein, in the manner disclosed by the instant record, does not fulfill any of the purposes set forth in paragraph 1773 of the Tariff Act of 1930.

The claim for free entry of the involved articles as regalia within said paragraph 1773 is, therefore, overruled.

Judgment will be entered accordingly.