**MORAL RE-ARMAMENT, INC.**

v.

**UNITED STATES.**

C.D. 4056; Protest Nos. 68/35795–8710–64.

United States Customs Court, First Division.

Aug. 3, 1970.

Washburn & Gray, New York City (Watson Washburn, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Andrew P. Vance, trial atty., New York City), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge:

Plaintiff, Moral Re-Armament, Inc., imported certain photographic film from Switzerland upon which customs duties were assessed by the government under paragraph 1551 of the Tariff Act of 1930, as amended. Plaintiff paid these duties and now seeks their recovery in this action, claiming that it is an organization covered by paragraph 1631(a) of the free list of the Tariff Act of 1930 (19 U.S.C. (1958 ed.) § 1201) and that the film should, therefore, have been admitted free of duty. At the time of the importation paragraph 1631 provided as follows:

> (a) Any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or any college, academy, school or seminary of learning in the United States, or any State or public library may import free of duty any book * * * slides and transparencies * . * * photograph * * * or chart, for its own use or for the encouragement of the fine arts, and not for sale, under such rules and regulations as the Secretary of the Treasury may prescribe.[1]

The single question is whether plaintiff is an organization covered by paragraph 1631(a) so as to entitle it to have imported the film free of duty.

The evidence as to plaintiff's purposes is contained in its certificate of incorporation. This certificate shows that it was incorporated for three purposes: (A) the advancement of the Christian religion;

---

1. The paragraph is presently contained in item 851.10 of the Tariff Schedules of the United States (19 U.S.C. (1964 ed.) § 1202).

(B) to disseminate Christian teachings through various communications media; and (C) to engage in one or more activities of a religious, charitable or educational nature which may be necessary or proper to carry out the above purposes. It is authorized to make charitable contributions and to hold property for charitable purposes.

Against this background, we turn again to paragraph 1631(a). Basically, to the extent relevant, it allows institutions which are incorporated *solely* for religious, philosophical, educational, scientific or literary purposes, or for the encouragement of the fine arts, to import, free of duty, specified goods of an educational or artistic nature when put to the institution's own use or for the encouragement of the fine arts. It may be added that exemptive provisions similar in wording and scope have been included in the tariff laws for over one hundred years.[2] This is in accordance with "the historical policy of Congress to encourage the advancement of culture and science in the United States by admitting free of duty certain articles for use by religious, philosophical, educational, scientific, and literary institutions." S. Rept. 1110 (82d Cong., 2d Sess., 1952), 2 U.S.Code Cong. and Adm.News (1952), pp. 1364–65.

The significant consideration in all this is that for over one hundred years, charitable organizations have been continuously omitted from paragraph 1631 (a) and predecessor provisions. What is more, the Congress over almost one hundred years of reenactment had abundant opportunity to include such organizations if it so desired. For example, in 1952 Congress added a new paragraph 1817 to the free list of the Tariff Act of 1930 to allow "[a]ny society or institution incorporated or established solely for educational, religious, or *charitable* purposes" to import free of duty any textile ma-

chine for its own use in the instruction of students.[3] [Emphasis added.] The legislative history of this provision shows that Congress was quite aware that charitable organizations—while included in the new paragraph 1817—were not included in paragraph 1631(a). Thus, the Senate Finance Committee Report on the bill specifically observed that paragraph 1631(a) provided for free importation of books, etc. "for use by religious, philosophical, educational, scientific, and literary institutions." S.Rept. 1110 (82d Cong., 2d Sess., 1952), 2 U.S.Code Cong. and Adm.News (1952), pp. 1364–65. Further, a memorandum prepared for the Finance Committee by the Tariff Commission not only quoted paragraph 1631 verbatim, it pointed out that the addition of the proposed new paragraph 1817 was "in reality a proposed extension of the present exemption provided for in paragraph 1631 * * *." Id., pp. 1366–67. In these circumstances, the fact that Congress explicitly included "charitable" organizations in the new paragraph 1817 and left paragraph 1631 unchanged would indicate that Congress did not intend such organizations to be included in paragraph 1631. And the further fact that Congress found it necessary to use the explicit term "charitable" in the new enactment would indicate that it did not intend that the term be read into paragraph 1631 by implication.

The short of the matter is that plaintiff is not incorporated solely for the purposes specified in paragraph 1631(a) and thus is not of the class entitled to the benefits that that statutory provision confers. For while it is incorporated for a religious purpose, it is also organized for charitable purposes and is specifically empowered to make charitable contributions and to hold property for charitable purposes.

An early case which reflects the strictness intended by the word "solely"

2. See e. g., the Act of March 2, 1861, Ch. 68, § 23, 12 Stat. 193.

3. Paragraph 1817 is presently contained in item 851.40 of the tariff schedules with the exception that the exemption for charitable institutions was dropped. See U. S. Tariff Commission, Tariff Classification Study, Schedule 8 (Nov. 15, 1960), p. 65.

as used in paragraph 1631(a) and related statutes is Massachusetts General Hospital v. United States, 112 F. 670 (1st Cir. 1901). There it was held that a hospital with incidental educational features, such as the training of nurses and the instruction of medical students, was not "an 'institution incorporated or established solely for * * * educational * * * purposes.'" In that case, the court was called upon to construe a limiting clause in paragraph 638 of the Tariff Act of 1897 identical to that in paragraph 1631(a). The court stated (112 F. at 672):

> * * * In one part the institution is ascertained by reference to its sole and exclusive purpose, in the other part by reference to a name, used in the ordinary and commonly accepted sense, and neither includes a general hospital which has, as an incident to its main purpose and usefulness, an educational feature. In other words, the exemption under the first part of this paragraph has reference to the sole object and the sole purpose, while under the second part it has reference to the name of the institution.
>
> Without straining words beyond their ordinary meaning, it cannot be held that congress, having limited its broad expression—that of "any institution or society"—by the idea that the purpose must be solely and exclusively of a certain kind, intended to include by implication in what followed, where the idea of exclusiveness is omitted, institutions not designated by name.
>
> * * *

Similarly, in United States v. Vandiver, 122 F. 740 (E.D.Penn.1903), a literary club was unsuccessful in obtaining duty-free treatment of imported books pursuant to paragraph 503 of the Tariff Act of 1897 (a predecessor of paragraph 1631(a)) on the ground that the club engaged in social activities that were not merely incidental to its literary activities. Therefore, it was held that the club was not established or incorporated *solely* for literary purposes. Likewise in St. Louis Symphony Society v. United States, 30 Treas.Dec. 1180, T.D. 36542, G.A. 7932 (1916), the Board of General Appraisers concluded that a musical symphony society was not incorporated solely for the education of its members.

More recently, another related provision, paragraph 1773 of the Tariff Act of 1930, which provides for the free importation of regalia imported for the use of any society incorporated "solely" for the same purposes as provided for in paragraph 1631(a), was held by the court not to include a *philanthropic* organization— i. e., a nonprofit organization which awarded scholarships to deserving undergraduate students with some musical ability. Duquesne University Tamburitzans v. United States, 41 Cust.Ct. 372, Abstract 62355 (1958). See also Ning Yung Benevolent Society v. United States, 4 Treas.Dec. 601, T.D. 23143, G.A. 4953 (1901). To similar import is the holding in E. F. Philbin v. United States, 52 Cust.Ct. 141, C.D. 2451 (1964), that an incorporated society, whose sole function consisted of sponsoring and producing a parade and ball, was not a corporation organized solely for the purposes provided for in paragraph 1773. The court stated (52 Cust.Ct. at 145–46):

> To qualify as a corporation entitled to claim free entry of regalia, an organization must establish that it has been incorporated *solely* for one of the purposes specified in paragraph 1773, *supra*. And where the stated objectives of a corporation permit it to engage in activities which do not fall within the strict concepts of the enumerated purposes, the statutory language is not satisfied.
>
> * * * * * *
>
> If a corporation [referring to the *Duquesne University* case] organized to promote concerts to raise funds for university scholarships is not a corporation organized for one of the purposes enumerated in paragraph 1773, *a fortiori*, a corporation organized to produce parades and balls is not such a corporation.

Following these precedents, it is clear that since one of plaintiff's purposes is

to give charity and to hold property for charitable purposes, it is not among the types of organizations paragraph 1631 (a) was intended to benefit. Nor does its certificate of incorporation in any wise indicate that such charitable purposes are merely incidental to its religious and educational purposes. See United States v. Vandiver, *supra*, 122 F. 740.

Plaintiff points out, however, that in 1941 and again in 1948 the Commissioner of Internal Revenue sent it a letter ruling that it was exempt from federal tax under the provisions of section 101(6) of the Internal Revenue Code of 1939 (26 U.S.C. (1952 ed.) § 101(6).[4] This section exempted from taxation:

> (6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *.

Plaintiff argues that the purpose of section 101(6) is substantially identical with that of paragraph 1631(a), and that since plaintiff was afforded exemption from federal taxation under section 101 (6), it is equally eligible for the exemption provided by paragraph 1631(a). We cannot agree. In the first place, the internal revenue provision—in contrast to the customs provision—exempts *charitable* organizations (in addition to religious, scientific, literary or educational ones) whose income does not inure to the benefit of private individuals.[5] Second, the purpose of the internal revenue pro-

vision is not the same as that of paragraph 1631(a). The customs provision—as previously discussed—is designed to aid scholarly organizations to import certain types of items; the internal revenue provision, on the other hand, is designed to aid nonprofit organizations—including charitable institutions—which serve the public interest.

We hold, in summary, that plaintiff has failed to establish that it is a corporation incorporated *solely* for the purposes enumerated in paragraph 1631 (a). The protest is overruled, and judgment will be issued accordingly.

NEWMAN and RE, JJ., concur.

---

4. Insofar as is here pertinent, section 101 (6) is identical to section 501(c) (3) of the Internal Revenue Code of 1954 (26 U.S.C. (1958 ed.) § 501(c) (3)).

5. It may be noted that in his 1948 letter ruling, the Commissioner of Internal Revenue wrote plaintiff that "based upon the evidence presented * * * it is shown that you are organized and operated exclusively for religious and educational purposes." However, the evidence in the present case—i. e., plaintiff's certificate of incorporation—demonstrates that plaintiff was organized for religious, educational and *charitable* purposes. In any event, whether or not plaintiff was organized for charitable, as well as religious and educational purposes, was quite immaterial to Internal Revenue consideration of the matter. For even if the evidence presented in 1948 had shown that plaintiff was organized for charitable purposes, this would have made no difference in its entitlement under section 101(6) to exemption from federal taxes.